No. 25-2074

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

YINNV LIU,

Plaintiff-Appellee,
v.

MONTHLY, et al.,

Defendants-Appellants.

Appeal from the United States District Court for the Northern District of Illinois
No. 24 CV 2982, Judge John Robert Blakey

BRIEF OF *AMICUS CURIAE*
STRATEGIC ALLIANCE FOR FAIR ECOMMERCE, NFP
IN SUPPORT OF APPELLEE AND AFFIRMANCE

Christopher W. Carmichael
**HENDERSON PARKS, LLC**
90 Canal Street, Fourth Floor
Boston, MA 02114
Tel: (617) 936-0795

*Counsel for Amicus Curiae*
**Strategic Alliance
for Fair Ecommerce, NFP**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2074</u>

Short Caption: <u>Liu v. Monthly, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Strategic Alliance for Fair Ecommerce (an Illinois non-for-profit corporation)</u>

<u> </u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Henderson Parks, LLC</u>

<u> </u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>No publicly held corporation owns 10 percent or more of its stock.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>Christopher Carmichael</u>    Date: <u>September 29, 2025</u>

Attorney's Printed Name: <u>Christopher Carmichael</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑ **No** ☐

Address: <u>90 Canal Street, Fourth Floor, Boston, MA 02114</u>

<u> </u>

Phone Number: <u>617-936-0795</u>    Fax Number: <u>617-936-0796</u>

E-Mail Address: <u>ccarmichael@henderson-parks.com</u>

rev. 12/19 AK

**TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT..............................................i

TABLE OF AUTHORITIES ...............................................................................iii

STATEMENT OF INTEREST OF AMICUS CURIAE ...........................................- 1 -

SUMMARY OF THE ARGUMENT ...................................................................- 2 -

ARGUMENT .................................................................................................- 3 -

I.     BACKGROUND. ..................................................................................- 4 -

II.    PROCEDURAL BACKGROUND OF THE CASE .........................................- 5 -

III.   ONLINE E-COMMERCE STORES THAT OFFER TO SELL AND OFFER TO SHIP INFRINGING PRODUCTS TO CONSUMERS IN THE U.S., INCLUDING ILLINOIS, AVAIL THEMSELVES TO THE JURISDICTION OF U.S. COURTS. .............................................................................- 7 -

    A.     Sellers Operating E-Commerce Stores on the Walmart Platform, Like Appellants, Avail Themselves to the Jurisdiction of U.S. Courts, Including in Illinois. ................................................................................- 9 -

    B.     Alternatively, the Court Should Consider the Propriety of The District Court's Jurisdiction Under Fed. R. Civ. P. 4(k)(2)..............................- 14 -

IV.    THE RECORD ON APPEAL DOES NOT SUPPORT A FINDING THAT THE DISTRICT COURT'S EXERCISE OF PERSONAL JURISDICTION WAS IMPROPER OR THAT SERVICE OF PROCESS WAS IMPROPER. ................- 17 -

    A.     Appellants Did Not Show Service Was Improper. ...................................- 18 -

    B.     Conclusory Statements and Unsubstantiated Documentary Evidence Are Insufficient to Establish that Jurisdiction Was Improper. .............................- 21 -

    C.     If the Court Has Any Reservations Regarding Affirming the Denial of Appellants' Fed. R. Civ. P. 60(b)(4) Motion Based on the Current Record, It Should Remand This Case in Order for the Parties to Fully Develop the Record as to the Issues of Service and Personal Jurisdiction.....................................- 25 -

CONCLUSION...............................................................................................- 27 -

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(b) ...................1

CERTIFICATE OF SERVICE...............................................................................1

ii

# TABLE OF AUTHORITIES

**Cases**

*Am. Girl, LLC v. Zembrka,* 2024 WL 4206197 (2d Cir. Sept. 17, 2024) .................. 25

*Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.,* 961 F.3d 942 (7th Cir. 2020) ........................................................................................... 14

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021) ................. 17

*Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398 (7th Cir. 1986) ............................... 21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................................. 3

*Calder v. Jones*, 465 U.S. 783 (1984) ....................................................................... 16

*Castro v. DeVry Univ., Inc.*, 786 F.3d 559 (7th Cir. 2015) ....................................... 24

*Collins v. Kibort*, 143 F.3d 331 (7th Cir. 1998) ........................................................ 23

*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) ................................................. 20

*Cruzan by Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261 (1990) ................ 20

*Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020) ................................ 13

*Delta Tech. Dev. LLC v. BIGJOYS*, 2024 WL 3755929 (N.D. Ill. Aug. 12, 2024) ..... 22

*Denius v. Dunlap,* 330 F.3d 919 (7th Cir. 2003) ........................................................ 8

*Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005) ................................................... 18

*Doe v. WebGroup Czech, A.S.*, 93 F.4th 442 (9th Cir. 2024) .................................... 17

*Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526 (7th Cir. 2025) ............................. 4

*Flag Co. v. Maynard,* 376 F. Supp. 2d 849 (N.D. Ill. 2005) ...................................... 15

*Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600 (7th Cir. 2002) ....................... 9

*Homer v. Jones-Bey*, 415 F.3d 748 (7th Cir. 2005) ...................................................... 19

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548 (7th Cir. 2001)....... 14, 15

*Jekyll Island-State Park Auth. v. Polygroup MacAu Ltd.*, 140 F.4th 1304 (11th Cir. 2025)................................................................................................................. 3, 15, 17

*LAJIM, LLC v. General Elec. Co.*, 917 F.3d 933 (7th Cir. 2019) .............................. 18

*Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584 (7th Cir. 1989)............................. 4

*Martinez de Ortiz,* 910 F.2d 376 (7th Cir. 1990)........................................................ 16

*Menominee Indian Tribe v. Thompson,* 161 F.3d 449 (7th Cir. 1998) ........................ 8

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012).......................................... 15

*Murphy v. Caterpillar Inc.*, 140 F.4th 900 (7th Cir. 2025)........................................ 22

*Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018).................. 15

*NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) ............................... 3, 4, 13, 24

*O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394 (7th Cir. 1993) .................... 19

*Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011)................... 21, 26

*Quiroga v. Fall River Music, Inc.*, 1998 WL 851574 (S.D.N.Y. Dec. 7, 1998) ........... 22

*Relational, LLC v. Hodges*, 627 F.3d 668 (7th Cir. 2010) ......................................... 18

*Thomas v. Dart*, 39 F.4th 835 (7th Cir. 2022) .......................................................... 14

*United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532 (7th Cir. 1991)........................................................................................................................ 16

## Other Authorities

COMPREHENSIVE WALMART MARKETPLACE PROGRAM RETAILER AGREEMENT,
Walmart.com,
https://seller.walmart.com/dist/assets/files/contracts/signup/Comprehensive_Walm
art_Marketplace_Program_Retailer_Agreement_FINAL_072522.pdf (last accessed

Sept. 22, 2025) ......................................................................................... 12

DEPT. OF HOMELAND SECURITY, *Combating Trafficking in Counterfeit and Pirated Goods; Report to the President of the United States* (Jan. 24, 2020), www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf. ........................................................................................ 8

Kari Kammel & Jessica Boeve, *Beyond the Brick-and-Mortar Paradigm: The Legal and Procedural Foundations of Schedule A Litigation in Combating Online Counterfeiting as Distinct from Traditional Trademark Enforcement*, (September 19, 2025), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5508098 ............... 5

*Our Global Reach is Your Playground*, WALMART MARKETPLACE, https://marketplace.walmart.com/?gclsrc=aw.ds&adid=22222222220&wmlspartner=wmtlabs&wl0=b&wl1=g&wl2=c&wl3=702593445281&wl4=dsa-3500001&wl5=9060252&wl6&wl7&wl8&veh=sem&gad_source=1&gad_campaignid=21386620735 (last accessed Sept. 19, 2025) ........................................................ 9

*Shipping Templates: Domestic or International Shipping Settings*, WALMART MARKETPLACE, https://marketplacelearn.walmart.com/guides/Shipping%20&%20fulfillment/Shipping%20Templates/Shipping-templates:-add-settings-manually (last accessed Sept. 20, 2025) ............................................................................................. 11

*Start Selling with Walmart*, WALMART MARKETPLACE, https://seller.walmart.com/signup?locale=en-US (last accessed Sept. 26, 2025) ... 10

U.S. CUSTOMS AND BORDER PROTECTION, *Intellectual Property Seizure Statistics*, Publication NO. 3964-0125 (2025), https://www.cbp.gov/sites/default/files/202501/intellectualpropertyrightsseizurestatisticsfiscalyear2024_pbrb_approved_with_publication_number_508.pdf. ............. 8

U.S. DEPT. OF COMMERCE, *Quarterly Retail E-Commerce Sales* (Feb. 19, 2025), https://www2.census.gov/retail/releases/historical/ecomm/24q4.pdf ....................... 8

**Rules**

Fed. R. Civ. P. 4(f)(3) ................................................................................... 19

Fed. R. Civ. P. 4(k)(2) ............................................................................. 14, 15

Fed. R. Civ. P. 60(b)(4) ............................................................................ 18, 25

**STATEMENT OF INTEREST OF AMICUS CURIAE**

Strategic Alliance for Fair Ecommerce, NFP (SAFE) is a dedicated coalition committed to advancing the protection of intellectual property rights in ecommerce. SAFE brings together legal practitioners to develop and promote best practices for litigation involving offshore infringers that unfairly violate intellectual property rights. Its mission is to address the unique challenges of online intellectual property disputes, ensuring fair, efficient, and effective outcomes in an ever-evolving e-commerce landscape.

The outcome of this case will have an effect on intellectual property owners' ability to enforce their rights against foreign e-commerce defendants. Given Appellee is unrepresented by counsel and not filed a brief in opposition to Appellants' appeal, SAFE provides this brief to address the issues the foreign e-commerce issues that affect intellectual property owners generally and explains how that affects the issues in this case.

SAFE has no financial or personal interest in the outcome of this appeal. No party's counsel authored the brief, in whole or part, and no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief. No person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF THE ARGUMENT

Amicus supports Appellee.  As discussed below, granting Appellant's request for relief under Fed. R. Civ. P. 60(b)(4) is not warranted because the record supports the District Court's finding of personal jurisdiction and that service was proper.

## ARGUMENT

The District Court properly found that Appellants' request for relief under Fed. R. Civ. P. 60(b)(4) should be denied because the record supported personal jurisdiction over the defendants based on the transaction of business and the offer to transact business and that service of process by electronic mail to the address registered with the e-commerce site was proper. Appellants' challenge to personal jurisdiction and service relies on unauthenticated documents and conclusory statements contained in declarations. Accepting defendants' vague protestations would unnecessarily and unjustifiably increase the difficulty in holding foreign counterfeiters who exploit the US market accountable.

Moreover, Appellants' argument that jurisdiction is not proper because they allegedly did not ship any infringing products to the forum state reduces the jurisdictional analysis for foreign e-commerce defendants to a single question. The analysis for jurisdiction is not reducible to a simple formula and defendants' targeting and willingness to do business in the forum are as important as shipping a specific infringing product into the forum state. *See NBA Props. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)) ("'[T]alismanic jurisdictional formulas'" are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction."); *see also Jekyll Island-State Park Auth. v. Polygroup MacAu Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) ("At the outset, we underscore that the minimum contacts analysis is immune to solution by checklist.").

- 3 -

## I.    BACKGROUND.

This case is a trademark infringement action against multiple e-commerce stores for the sale of products that infringe upon Appellee Yinnv Liu's (hereafter, "Appellee") registered trademark.  [Complaint, R. 1].

This Circuit has recognized since the 1980s that "the sale of counterfeit merchandise has become endemic -- perhaps pandemic." *Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 588 (7th Cir. 1989).  The situation has only worsened since then, with the rise of aggregate e-commerce sites that allow individuals to sell goods, easy digital account creation, and direct shipping from overseas.  In today's world, intellectual property owners all face the same problem: stopping rampant infringement by offshore e-commerce sellers.  *See e.g., NBA Props.*, 46 F.4th at 617; *Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526, 528 (7th Cir. 2025).

This problem exists because thousands of offshore e-commerce store owners that are infringing U.S. intellectual property rights:  (1) operate anonymously, often under fake identities, and often using multiple accounts or profiles; (2) are located outside of the jurisdiction of the U.S., and; (3) face no repercussions for trafficking in infringing or counterfeit goods, and have no incentive to stop their illegal activity.  "Illinois no doubt has an interest in protecting its consumers from purchasing fraudulent merchandise." *NBA Props.*, 46 F.4th at 627.  Traditional enforcement tools have not kept pace with the tactics of modern infringers in a rapidly evolving

- 4 -

landscape.[1]  Actions like the one brought by Appellee have emerged as an effective enforcement mechanism for intellectual property rights owners, providing a scalable, adaptable, and legally sound means of protecting intellectual property rights from rampant offshore infringement occurring on e-commerce platforms.

## II.    PROCEDURAL BACKGROUND OF THE CASE

This matter is on appeal from the denial of the motion to vacate default judgment submitted by Appellants 268 Joybuy 12573, 269 Joybuy 10253, 272 Joybuy 7323, 273 Joybuy 8504, 279 Joybuy 12574, 288 Joybuy 12907, 289 Joybuy 12516, 293 Joybuy 12634, 295 Joybuy 7326, 296 Joybuy 12523, 298 Joybuy 12449, 301 Joybuy 12893, 338 Joybuy 12907, 339 Joybuy 12907, and 340 Joybuy 12907 (Appellants with "Joybuy Stores" included in their seller alias are collectively referred to as the "Joybuy Store Appellants") and Monthly (the Joybuy Store Appellants and Monthly represent all Appellants in this matter and are collectively referred to as "Appellants").  [Motion to Vacate Default Judgment, R. 75]; [May 21, 2025 Order, R. 81].

Appellants contended that the default judgment should be vacated, asserting, among other grounds, that both personal jurisdiction and service of process were improper.  [R. 75, pp. 7-19].  Specifically, Appellants argued that jurisdiction was not proper where they allegedly did not ship at least one infringing product to

---

[1] Kari Kammel & Jessica Boeve, *Beyond the Brick-and-Mortar Paradigm: The Legal and Procedural Foundations of Schedule A Litigation in Combating Online Counterfeiting as Distinct from Traditional Trademark Enforcement*, 5-9 (September 19, 2025), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5508098.

Illinois, and service was not proper where they claimed to not have been in receipt of Appellee's electronic service of process.  [R. 75, pp. 7-19].

Appellants submitted two declarations to support their motion.  One declaration was submitted on behalf of the Joybuy Store Appellants by Yi Sheng (hereafter, the "Sheng Declaration"), who was identified as the manager of the Joybuy Store Appellants.  [Declaration of Yi Sheng, R. 75-1, ¶ 2].  The Sheng Declaration indicated that "the [Joybuy Store Appellants] sold 11 items of the Accused Product to the United States."  [R. 75-1, ¶ 4].  The Sheng Declaration further asserted that "no item was shipped to the State of Illinois" by the Joybuy Store Appellants, and that the Joybuy Store Appellants "did not receive any service emails from plaintiff and were not aware of the case until August 2024."  [75-1, ¶¶ 4-5].  Exhibit A to the Sheng Declaration contained the Joybuy Store Appellants' purported sales records for the infringing product.  [R. 75-1, pp. 4-24].  The sales records are predominantly in a foreign language. [R. 75-1, pp. 4-24].

Another declaration was submitted on behalf of Appellant Monthly by a person identified as its manager, Zhihua Huang (hereafter, the "Huang Declaration").  [Declaration of Zhihua Huang, R. 75-2, ¶ 2].  The Huang Declaration claimed Monthly "sold 0 items of the Accused Product for $0, and no item was shipped to the State of Illinois."  [R. 75-2, ¶ 4].  The Huang Declaration further alleged that Monthly "was not aware of the case until August 2024." [R. 75-2, ¶ 5].  Exhibit A to the Huang Declaration contained Monthly's purported sales records for

the infringing product.  [R. 75-2, pp. 3-6].  These sales records are almost completely in a foreign language. [R. 75-2, pp. 3-6].

The District Court denied Appellants' motion to vacate the default judgment. [R. 81.].  The District Court provided the following reasoning:

> "…Defendants waited five months before challenging the default and, even in their motion, fail to explain their delay. Defendants argue that this Court lacked personal jurisdiction, but this Court previously held otherwise, finding personal jurisdiction based upon Defendants' maintenance of interactive websites and sales to customers within the State of Illinois, see [19] at 1−2; [9−7] at 52−58, 68−74, 96−98, 132−38, 152−54, 160−66, 172−74, 184−86, 331−42, and finding that electronic service of process sufficed, [19] at 7−8. Defendants offer no factual basis to revisit those prior findings."

[R. 81].

### III.  ONLINE E-COMMERCE STORES THAT OFFER TO SELL AND OFFER TO SHIP INFRINGING PRODUCTS TO CONSUMERS IN THE U.S., INCLUDING ILLINOIS, AVAIL THEMSELVES TO THE JURISDICTION OF U.S. COURTS.

There is no dispute that Appellants set up e-commerce stores to sell products in the United States.  By taking advantage of the U.S. market, Appellants, and similar e-commerce sellers, purposefully avail themselves to the jurisdiction of U.S. courts.  *See NBA Props.*, 46 F.4th at 624 ("In assessing purposeful direction, what matters is its structuring of its own activities so as to target the Illinois market.").  Online e-commerce sellers, such as Appellants, operate on platforms like Amazon, eBay, Alibaba, Walmart, and Temu.  These platforms enable international sellers to access the U.S. market and to directly advertise and sell products to U.S. consumers.  This has contributed to an e-commerce boom where, in 2024 alone, the

total e-commerce sales in the U.S. were $1,192.6 billion.  U.S. DEPT. OF COMMERCE, *Quarterly Retail E-Commerce Sales* 1 (Feb. 19, 2025), https://www2.census.gov/retail/releases/historical/ecomm/24q4.pdf.[2]  However, the increase in e-commerce sales has coincided with a sharp increase in the sale and shipment of unauthorized products into the U.S., especially from China.[3]  For example, in 2024, U.S. Customs and Border Protection seized over 32 million goods worth the total manufacturer's suggested retail price of $5.42 billion.  U.S. CUSTOMS AND BORDER PROTECTION, *Intellectual Property Seizure Statistics*, Publication NO. 3964-0125, 2 (2025), https://www.cbp.gov/sites/default/files/202501/intellectualpropertyrightsseizurestatisticsfiscalyear2024_pbrb_approved_with_publication_number_508.pdf.

Thus, where international e-commerce stores choose to exploit the U.S. marketplace, they should reasonably anticipate being hailed into U.S. courts when they infringe the rights of intellectual property owners in this country.

---

[2] Amicus cites to reports from the U.S. Dept. of Commerce, Dept. of Homeland Security, and U.S. Customs and Border Protection.  *See Denius v. Dunlap,* 330 F.3d 919, 926 (7th Cir. 2003) (addressing judicial notice of information from governmental websites and observing that "[j]udicial notice may be taken at any time, including on appeal.").

[3] In its 2020 report to the President, the Department of Homeland Security stated that "e-commerce platforms, third-party marketplaces, and their supporting intermediaries have also served as powerful stimulants for the trafficking of counterfeit and pirated goods." DEPT. OF HOMELAND SECURITY, *Combating Trafficking in Counterfeit and Pirated Goods; Report to the President of the United States* 20 (Jan. 24, 2020), www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

**A. Sellers Operating E-Commerce Stores on the Walmart Platform, Like Appellants, Avail Themselves to the Jurisdiction of U.S. Courts, Including in Illinois.**

Appellants operated their e-commerce stores through the walmart.com online marketplace platform, which only facilitates online sales directed at U.S. consumers.  [Schedule A to the Complaint, R. 1-1, pp. 57-61, 65].  Walmart Inc. operates third-party online marketplaces in four markets: (1) the United States, through walmart.com; (2) Canada, through walmart.ca; (3) Mexico, through walmart.com.mx; and (4) Chile, through walmartchile.cl.[4]



*Fig. 1 – Screenshot From the marketplace.walmart.com Website*[5]

---

[4] Figures 1-3 from Walmart's website and are provided for background and context.  *See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) ("We may take judicial notice of matters of public record, and we exercise that authority here to note that the Suburban Bank of Barrington is a branch office of Harris Bank.").

[5] *Our Global Reach is Your Playground*, WALMART MARKETPLACE, https://marketplace.walmart.com/?gclsrc=aw.ds&adid=22222222220&wmlspartner=wmtlabs&wl0=b&wl1=g&wl2=c&wl3=702593445281&wl4=dsa-3500001&wl5=9060252&wl6&wl7&wl8&veh=sem&gad_source=1&gad_campaignid=21386620735 (last accessed Sept. 19, 2025).

When registering for an account on walmart.com, sellers designate the market in which their products will be offered. Fig. 2 is a screenshot from Walmart's third-party seller account creation portal that shows a seller can select between four markets, one of which is the United States.



*Fig. 2 – Screenshot of Walmart's Third-Party Seller Account Creation Portal[6]*

When creating a walmart.com store and product listings, sellers create shipping templates to determine shipping rates, manage shipping methods, and establish which regions and states they will ship products to, or what regions and

---

[6] *Start Selling with Walmart*, WALMART MARKETPLACE, https://seller.walmart.com/signup?locale=en-US (last accessed Sept. 26, 2025).

states to exclude.  As shown in Fig. 3, sellers can select the states in which they will

offer to sell and ship products.



*Fig. 3 – Screenshot From the marketplacelearn.walmart.com Website
Regarding Shipping Templates*[7]

In setting up their accounts, sellers are also required to abide by the

"Comprehensive Walmart Marketplace Program Retailer Agreement" when

creating their walmart.com stores. COMPREHENSIVE WALMART MARKETPLACE

PROGRAM RETAILER AGREEMENT, Walmart.com,

https://seller.walmart.com/dist/assets/files/contracts/signup/Comprehensive_Walma

---

[7] *Shipping Templates: Domestic or International Shipping Settings*, WALMART
MARKETPLACE,
https://marketplacelearn.walmart.com/guides/Shipping%20&%20fulfillment/Shipping%20T
emplates/Shipping-templates:-add-settings-manually (last accessed Sept. 20, 2025) (Fig. 3
was extracted from a video located under the header "*Helpful resources*" within the cited
webpage.  Fig. 3 can be seen at 3:17-3:22 of the referenced video).

rt_Marketplace_Program_Retailer_Agreement_FINAL_072522.pdf (last accessed Sept. 22, 2025) (the "Retailer Agreement").

The Walmart Retailer Agreement requires that Defendants "only sell Products through the Marketplace Program that are authentic" and "assure that Products are authentic, authorized for sale, and not stolen, counterfeit, illegal or misbranded. [Appellants] may not (and [Appellants] represent and warrant that [Appellants] will not) list any Product [. . .] that is counterfeit, illegal, stolen, or fraudulent, or infringes any third-party 'Intellectual Property Rights.'" *Id.* at ¶ 2(e). Since walmart.com targets only the U.S., the Retailer Agreement requires that sellers "only offer Products for sale . . . that may legally be sold and shipped in all U.S. states." *Id.* at ¶ 2(c).

In this case, evidence was presented that showed the Apellants are China-based entities that operate e-commerce stores on walmart.com under their seller aliases.  [Screenshots of Appellants' E-Commerce Stores, R. 9-7, pp. 51-58, 67-74, 95-98, 131-38, 151-54, 159-66, 171-74, 183-86, 330-42].  Appellants created walmart.com stores (as opposed to, e.g., walmart.ca or walmart.com.mx stores) to target the U.S market.  Fig. 4 is an example screenshot of Appellant Joybuy Marketplace (U.S.)'s store, submitted by Appellee as evidence of personal jurisdiction, which demonstrates Appellant's willingness to sell and ship infringing products into Illinois.



*Fig. 4 – Screenshot of Joybuy Marketplace(U.S.)'s Walmart Store*[8]

Thus, Appellants could have excluded Illinois consumers, but instead deliberately chose to exploit the Illinois consumer market. *See NBA Props.*, 46 F.4th at 624 ("…in assessing purposeful direction, what matters is its structuring of its own activities so as to target the Illinois market."). Appellants were open for business in Illinois and reasonably could have foreseen their products being sold in Illinois. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020) ("There is no *per se* requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum.").

---

[8] [R. 9-7, p. 54].

- 13 -

### B. Alternatively, the Court Should Consider the Propriety of The District Court's Jurisdiction Under Fed. R. Civ. P. 4(k)(2).

The record supports affirmance on another ground here because Appellants were also subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). Appellee did not respond to Appellants' Rule 60(b) motion below and did not raise any argument in response, but this Court may affirm on any basis supported by the record. *See Thomas v. Dart*, 39 F.4th 835, 840 (7th Cir. 2022) ("[T]his court may affirm a district court's judgment on any basis supported by the record. . ."); *see also ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (applying Rule 4(k)(2) for the first time on appeal because "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not.").

Since Appellants operated U.S.-facing e-commerce stores that advertised, offered for sale, and sold infringing products to U.S. consumers, jurisdiction under Rule 4(k)(2) was proper.[9] When "[a] defendant contends that [it] cannot be sued in the forum state and refuses to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l, Inc.*, 256 F.3d at 552 (7th Cir. 2001). If a defendant argues that it is not subject to personal jurisdiction

---

[9] In its Complaint, Appellee asserted that Appellants directed their business activities towards the U.S. in general. Specifically, Appellee alleged that "Defendants have targeted sales to Illinois *residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States*, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's trademarks to residents of Illinois." [R. 1, ¶ 6, emphasis added]; *see Arwa Chiropractic, P.C. v. Med.-Care Diabetic & Med. Supplies, Inc.,* 961 F.3d 942, 948 (7th Cir. 2020) ("When a court enters a default judgment as to liability, it must accept as true all factual allegations in the complaint, except those regarding the amount of damages.").

in the forum, it has the burden to affirmatively demonstrate which forum would have been proper. *Id.*; *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) ("a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent."); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018) ("[The defendant] had to affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it."). The provision was added "to cover persons who do not reside in the United States and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc.*, 256 F.3d at 551.

Any federal district court can exercise personal jurisdiction over Defendants under Rule 4(k)(2) if: (1) the plaintiff's claim is based on federal law; (2) no state could exercise jurisdiction over the defendant; and; (3) the exercise of jurisdiction is consistent with the laws and Constitution of the United States. *Jekyll Island-State Park Auth.*, 140 F.4th at 1315. Here, Appellee's claims were for federal trademark infringement. [R. 1]. Appellants also did not offer an alternative venue where personal jurisdiction would have been proper. Thus, the first and second elements are satisfied.

When analyzing whether exercising jurisdiction is consistent with the laws and Constitution of the United States, courts apply the same "minimum contacts" test but consider a defendant's contacts with the United States as a whole, instead of its contacts with any one particular state. *See Martinez de Ortiz,* 910 F.2d 376, 382 (7th Cir. 1990) (finding where claim raises a federal question, due process commands sufficient contacts only with the United States as a whole); *see also United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) ("When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States."). In this context, courts can consider whether the defendant engaged in: (1) intentional conduct (or "intentional and allegedly tortious" conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects (*i.e.,* Plaintiffs' injury) would be felt in the relevant forum. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

Here, Appellants intentionally directed the sale of infringing products to the U.S. through their Walmart e-commerce stores. As admitted in the Sheng Declaration, "the [Joybuy Store Appellants] sold 11 items of the Accused Product to the United States." The Joybuy Store Appellants, therefore, conceded that they have availed themselves of the jurisdiction of the U.S. where they created U.S.-facing online e-commerce stores that target U.S. consumers, and sold infringing products into the United States.

Additionally, since each Appellant operates on the U.S. walmart.com online marketplace and Walmart.com only sells to the U.S., Appellants purposefully directed their business activities towards the U.S. *See Doe v. WebGroup Czech, A.S.*, 93 F.4th 442, 448 (9th Cir. 2024) (finding personal jurisdiction under Rule 4(k)(2) where defendant used U.S. based content delivery network); *see also See Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 977 (9th Cir. 2021) (personal jurisdiction found under Fed. R. Civ. P. 4(k)(2) where Defendant advertised to the U.S.). Appellants also had reason to know their acts inflicted harm on Appellee in the U.S. [R. 1, ¶ 6]; *see Jekyll Island-State Park Auth.*, 140 F.4th at 1320 ("Due process does not prohibit us from exercising personal jurisdiction over a nonresident defendant because of its own choices to contract with American companies or market its products to U.S. residents.").

Accordingly, because the Joybuy Store Appellants conceded they engaged in the sale of goods to U.S. consumers, and all Appellants operate e-commerce stores exclusively within the United States, personal jurisdiction over Appellants is proper under Rule 4(k)(2).

## IV. THE RECORD ON APPEAL DOES NOT SUPPORT A FINDING THAT THE DISTRICT COURT'S EXERCISE OF PERSONAL JURISDICTION WAS IMPROPER OR THAT SERVICE OF PROCESS WAS IMPROPER.

Relief under Fed. R. Civ. P. 60(b)(4) is extraordinary, and the record does not support reversing the District Court's decision that Appellants have failed to satisfy their burdens of showing that the District Court lacked personal jurisdiction and

that service of process was improper. *See LAJIM, LLC v. General Elec. Co.*, 917 F.3d 933, 949 (7th Cir. 2019) (finding that relief under Rule 60(b) is "an extraordinary remedy granted only in exceptional circumstances."); *see also Disch v. Rasmussen*, 417 F.3d 769, 778-79 (7th Cir. 2005) ("[R]ule 60(b)[] places a heavy burden on the party seeking to undo an existing judgment.").

## A. Appellants Did Not Show Service Was Improper.

The default judgment should not be rendered void solely based on assertions that service was never received. "To make a prima facie showing, the movant must simply produce a return of service identifying the recipient and noting when and where service occurred, thereby providing enough detail so the opposing party knows what evidence he must rebut." *Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010). "Once such a *prima facie* showing is made, the burden shifts to the defendant[s] to demonstrate that service was not received." *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005). A signed return of service constitutes *prima facie* evidence of valid service "which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

The District Court ordered that "Plaintiff may provide notice of these proceedings to Defendants, including…service of process pursuant to Fed. R. Civ. P. 4(f)(3), by electronically publishing a link to the Complaint, this Order, and other relevant documents on a website and by sending an e-mail, to the e-mail addresses identified by third parties, that includes a link to said website." [Temporary

- 18 -

Restraining Order, R. 19, ¶ 6.]. The Temporary Restraining Order authorized Appellee to serve expedited discovery on Walmart, which included requests to obtain Appellants' email addresses. [R. 19, ¶ 2(a)]. Appellee filed an executed summons on the record and declared that "[o]n June 17, 2024, the undersigned served **via email to the addresses provided by the platforms** with a link that contains the Complaint, Summons, the Preliminary Injunction Motion and Notice, and all other court filings" on Appellants and the other defendants in this case. [Summons, R. 31, p. 2, emphasis added]. Because Appellee demonstrated how and when service was accomplished and that service was accomplished on Appellants email address registered with Walmart, Appellee established a *prima facie* showing that service was proper.

To rebut Appellee's *prima facie* showing, Appellants submitted conclusory statements that they never received the emails and/or that they were not aware of the case. The Huang Declaration alleged that Appellant Monthly "was not aware of the case until August 2024." [R. 75-2, ¶ 5]. The Huang Declaration does not specifically allege that Monthly did not receive Appellee's electronic service of process. With respect to the Joybuy Store Appellants, Sheng declared "[t]he Stores did not receive any service emails from plaintiff and were not aware of the case until August 2024 when Joybuy platform manager informed us via WeChat message. The Stores had no access to the Joybuy Walmart accounts or the emails associated with them. To wit, the Store and I never received service emails, or the complaint, or the summons from either plaintiff or Joybuy platform." [R. 75-1, ¶ 5].

The general assertion that service was not received does not rise to the level of a "clear and convincing" showing that service was improper. *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (The Supreme Court defining "clear and convincing" evidence as evidence that places "in the ultimate fact-finder an abiding conviction that the truth of [the movant's] factual contentions are 'highly probable.'"); *see also Cruzan by Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 285 n.11, (1990) (The Supreme Court describing "clear and convincing evidence" as "evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue").  Appellants were put on notice that Appellee performed service "via email to the addresses provided by the platforms."  [R. 31]. To register to sell on walmart.com Appellants had to provide an email address. Appellants cannot credibly claim they did not know the email addresses they provided to Walmart.  Nor should Appellants be able to claim an inability to receive messages to the email accounts they utilized to do business in the United States. Moreover, Appellants did not provide any evidence that they searched their email inboxes for the service emails at issue.

Accordingly, this Court should affirm the District Court's decision that Appellants offered "no factual basis to revisit" its finding that electronic service sufficed.

**B. Conclusory Statements and Unsubstantiated Documentary Evidence Are Insufficient to Establish that Jurisdiction Was Improper.**

Since Appellants first challenged personal jurisdiction in Illinois via post-judgment motions, Appellants bore the burden of proof. "If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment rule 60(b)(4) motion." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986); *see Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011) ("Although a defendant who asserts a jurisdictional defense in a collateral proceeding bears the burden of proving that the court lacked jurisdiction over his or her person, the defendant benefits from the fact that the collateral challenge to jurisdiction can be brought at any time.").

Here, Appellants submitted written declarations, asserting that they did not sell any infringing products to Illinois consumers. Specifically, the Sheng Declaration alleges that "no [infringing product] was shipped to Illinois" by the Joybuy Store Appellants and the Huang Declaration alleges that Appellant Monthly "sold 0 items of the Accused Product for $0, and no item was shipped to the State of Illinois." [R. 75-1, ¶ 4]; [R. 75-2, ¶ 4]. Both declarations included purported sales records for the infringing products at issue. [R. 75-1, pp. 4-24]; [R. 75-2, pp. 3-6].

Appellants' sales records contain numerous issues that undermine the trustworthiness of the documents. *See Murphy v. Caterpillar Inc.*, 140 F.4th 900, 908 (7th Cir. 2025) ("To be admissible as a business record, a document must have

- 21 -

sufficient indicia of trustworthiness to be considered reliable."). For one, the sales records submitted by the Joybuy Store Appellants are presented primarily in a foreign language, while the sales records submitted with the Huang Declaration are almost completely in a foreign language. [R. 75-1, pp. 4-24]; [R. 75-2, pp. 3-6]. *See Delta Tech. Dev. LLC v. BIGJOYS*, 2024 WL 3755929, at \*2 (N.D. Ill. Aug. 12, 2024) ("It is a well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation."); *see also Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at \*2 n.3 (S.D.N.Y. Dec. 7, 1998) ("Translations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence.").

Neither Sheng nor Huang explain how the search of Appellants' sales records was conducted or if the sales records reflect data from a designated time period. Absent this information, it cannot be readily determined what the data in the records actually represents. For example, each page of the sales records submitted with the Sheng Declaration has a different "SKU code of seller" number. The Sheng Declaration does not explain what this code means. [R. 75-1, pp. 4-24]. It is also unclear which records apply to specific Joybuy Store Appellants.

Appellants do not provide any explanation as to where the sales records originated or how they were maintained. *See Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) ("A proper foundation is established if the party attempting to admit the evidence demonstrates that the business records "'are kept in the course of

regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness.'").  The records submitted with the Sheng Declaration seem to be maintained using a software or platform provided by "JD.com."  [R. 75-1, pp. 4-24].  However, there is no explanation by Sheng as to how these records are integrated with the Walmart platform, nor is there any claim that these records were kept in the course of regularly conducted business.  As for the sales records submitted along with the Huang Declaration, it is not readily apparent that the documents attached to the Huang Declaration are genuine sales records, nor is there any indication of the program or method used to preserve and maintain Appellant Monthly's records.  [R. 75-2, pp. 3-6].  As such, Appellants did not lay the proper foundation for these records.

Furthermore, Sheng and Huang failed to establish, under Fed. R. Evid. 803(6), that they were qualified to certify the authenticity of the submitted business records.  *See Collins*, 143 F.3d at 337-38 ("While Rule 803(6) does not require that the qualified witness be the person who prepared the record, or that the witness have personal knowledge of the entries in the records, the business records exception does require that the witness have knowledge of the procedure under which the records were created.") (citations omitted).  Both Sheng and Huang claim they are "manager[s]" for the Appellants and that they "have access to the business record of the Store[s]."  [R. 75-1, ¶ 2]; [R. 75-2, ¶ 2].  These statements fail to establish that Sheng and Huang were familiar with Appellants' record-keeping

- 23 -

practices as required under Rule 803(6); they just state they *have access* to Appellants' business records. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 578 (7th Cir. 2015) (finding a witness could not properly authenticate the defendant's business records where the witness testified she was a "supervisor" for the defendant and merely stated that a document was "generated by [defendant] in the normal course of business reflecting registered students by advisor for January of 2008."). As such, Sheng and Huang could not authenticate the purported sales records.

The only other evidence submitted by Appellants to challenge jurisdiction were assertions in the Sheng and Huang Declarations that "no item was *shipped* to the State of Illinois." [R. 75-1, ¶ 4]; [R. 75-2, ¶ 4]. Appellants did not submit evidence challenging whether infringing products were *purchased* by Illinois consumers, which is the relevant consideration for jurisdiction. *See NBA Props.*, 46 F.4th at 624 ("…in assessing purposeful direction, what matters is its structuring of its own activities so as to target the Illinois market."); *see also Am. Girl, LLC v. Zembrka*, 2024 WL 4206197, at *1 (2d Cir. Sept. 17, 2024) (holding personal jurisdiction "does not require a shipment. It requires a transaction"). The conclusory allegation that no infringing items were shipped to Illinois is insufficient to support a finding that the exercise of personal jurisdiction was improper.

Accordingly, the District Court's decision should be affirmed because Appellants have not submitted sufficient evidence to overcome their burden to prove that jurisdiction was not proper in this matter.

**C. If the Court Has Any Reservations Regarding Affirming the Denial of Appellants' Fed. R. Civ. P. 60(b)(4) Motion Based on the Current Record, It Should Remand This Case in Order for the Parties to Fully Develop the Record as to the Issues of Service and Personal Jurisdiction.**

Appellants ask the Court to reverse the District Court's decision and to enter relief under Fed. R. Civ. P. 60(b)(4). (Appellants' Opening Brief, pp. 6, 19, 28-29.) As explained above, the burden is on Appellants to prove that both personal jurisdiction and service were improper, and the record does not support completely vacating the default judgment order. However, if the Court does not find that the record supports upholding the District Court decision, then the action should be to remand for further proceedings in the District Court.

The decision in *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011) provides guidance on this point. In *Philos*, the district court denied the defendants' motion to vacate. *Id*. at 854. The district court denied the motion without addressing the merits of the defendants' personal jurisdiction objection, stating simply that it found "no legal justification for this matter coming before the Court well after judgment has been entered and all parties have had an opportunity to fully litigate the issues." *Id*. The district court added that, because it had received "sufficient and appropriate justification to exercise personal jurisdiction" at the time it granted default judgment against the defendants, it saw no reason to second-guess its original ruling on that issue. *Id*. This Court determined that the district court mistakenly believed the defendants' Rule 60(b)(4) motion was untimely, failed to consider the arguments and evidence offered in support of the

- 25 -

motion, and made no findings of fact for appellate review. *Id*. at 859. The parties also had submitted conflicting affidavits and documentary evidence concerning key facts relevant to whether the defendants had sufficient minimum contacts with Illinois to establish jurisdiction in the district court. *Id*. This Court remanded so these factual issues could be resolved by the district court. *Id*.

Like in *Philos*, the District Court did not make any findings regarding the evidence submitted by Appellants in support of their motion to vacate the default judgment. [R. 81]. The District Court found that Appellee provided evidence to establish a *prima facie* case for personal jurisdiction and that service was properly effectuated. The District Court ultimately ruled that "Defendants offer no factual basis to revisit those prior findings." [R. 81]. Thus, as in *Philos*, if this Court finds any ambiguity between the parties' evidence, then the case should be remanded to resolve any conflict of fact. [R. 81].

Appellee was also granted the ability to serve expedited discovery on Walmart, which included the ability to request the Appellants' infringing product sales recorded by Walmart. [R. 19, ¶ 2(b)]. Such records from Walmart could substantiate Appellants' sales records or resolve any discrepancies in Appellants' representations.

Walmart also provided Appellee the email addresses Appellants used for their Walmart accounts. [R. 31, p. 2]. Further information from Walmart could show Appellants used the same email addresses to communicate with Walmart or customers, including Illinois customers.

## CONCLUSION

Because the decision of the District Court denying Appellants' Rule 60 motion was correct, the decision should be affirmed.

Respectfully submitted,

***AMICUS CURIAE* STRATEGIC ALLIANCE FOR FAIR ECOMMERCE, NFP**

By: s/ Christopher Carmichael
Attorney for *Amicus Curiae*

Christopher W. Carmichael
**HENDERSON PARKS, LLC**
90 Canal Street, Fourth Floor
Boston, MA 02114
Tel: (617) 936-0795

*Counsel for Amicus Curiae*
**Strategic Alliance
for Fair Ecommerce, NFP**

- 27 -

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(b)</u>

The undersigned hereby certifies that the foregoing Brief for Defendant-Appellant complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(b). The brief was printed using 12-point Century Schoolbook font, with footnotes in 11-point Century Schoolbook font.  Microsoft Word used to prepare the document, excluding the Table of Contents, Table of Authorities, and Statement of Interest, calculates that it contains 5733 words, including footnotes.

<u>/s/ Christopher Carmichael</u>

## CERTIFICATE OF SERVICE

The undersigned certifies that on **September 29, 2025**, an electronic copy of the foregoing was filed Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: /s/ Christopher Carmichael